LADVA LAW FIRM
ASHWIN LADVA (SBN 206140)
530 Jackson St., 2nd Floor
San Francisco, CA 94133
Telephone:  (415) 296-8844
Facsimile:  (415) 296-8847
Email:  ladvalaw@gmail.com

Attorney for Plaintiffs
DYLAN EACRET and JONATHAN KENT MERRITT

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYLAN EACRET and JONATHAN KENT MERRITT, individually and on behalf of other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRUNCH, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:18-cv-04374<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Assigned for All Purposes to the Hon. Jon S. Tigar, Courtroom 9<br><br>Hearing Date:  August 8, 2019<br>Hearing Time:  2:00 p.m. |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 8, 2019, at 2:00 p.m. or as soon thereafter as counsel may be heard, before the Honorable Jon S. Tigar in Courtroom 9 of the above-entitled court, located on the 19th floor of 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs Dylan Eacret and Jonathan Kent Merritt (collectively "Plaintiffs") as individuals, on behalf of all others similarly situated, and the putative class, will and hereby do move the court for entry of the following orders:

1.      Provisionally certifying the class for purposes of settlement only;

2.      Preliminarily appointing Plaintiffs Dylan Eacret and Jonathan Kent Merritt as Class Representatives for purposes of settlement only;

3.      Preliminarily appointing Ashwin Ladva of Ladva Law Firm as Class Counsel for the purposes of settlement only;

4.      Preliminarily approving the settlement between Plaintiffs and Defendant Crunch, LLC ("Defendant") as set forth in the Parties' Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") as fair, adequate, and reasonable, including payment by Defendant of the Maximum Settlement Amount of $1,325,000. A true and correct copy of the Settlement Agreement is attached to the Declaration of Ashwin Ladva ("Ladva Decl.") in support of Plaintiffs' Motion for Preliminary Approval as Exhibit 1.

5.      Preliminarily approving the Enhancement Awards of $7,500 each to Plaintiffs Jonathan Kent Merritt and Dylan Eacret in recognition of their service to the class and the risks that they undertook in filing and/or joining the lawsuit;

6.      Preliminarily approving Class Counsel's request for up to 25% of the Maximum Settlement Amount as attorney's fees (i.e., up to $331,250.00);

7.      Appointing Simpluris, Inc., located at 3176 Pullman Street, #123 Costa Mesa, CA 92626 as the Settlement Administrator for purposes of administering the settlement, including mailing notices and claims administration, and approving the fees and costs

of the administration process, estimated to be no more than $15,000, to be deducted from the Maximum Settlement Amount;

8.   Approval of the parties' form and method of notifying the Class Members of the Settlement Agreement, and ordering that they be disseminated to the Class as provided for the Parties' Stipulation for Class Action Settlement and Release.

9.   An order scheduling the hearing date for Final Approval of the Class Settlement.

Plaintiffs make this unopposed motion on the grounds that the settlement is fair, adequate, reasonable, and within the range for possible final approval.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities and the Declaration of Ashwin Ladva in support thereof; the Parties' Joint Stipulation of Class Action Settlement and Release; as well as all other pleadings and evidence on file in this action and any additional evidence and argument that may be presented by the Parties at the time of hearing.

Dated: June 28, 2019                    LAW OFFICES OF ASHWIN LADVA

By _____
       Ashwin Ladva
       Attorneys for Plaintiffs
       DYLAN EACRET and JONATHAN KENT
       MERRITT

**Cases**

*Amchem Prods., Inc. v. Windsor*, ...................................................................................... 8,9

*Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW FFMX, 2010 WL 8591002, at
  *15 (C.D. Cal. Apr. 12, 2010)...................................................................................... 15

*Chun-Hoo v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010)........................... 12

*Cruz v. Fante*, San Mateo County Superior Court Case No. CIV CIV505477 ........................... 12

*Deatrick v. Securitas Sec. Servs. USA*, Case No. 13-cv-05016, 2016 U.S. Dist. LEXIS 132746
  (N.D. Cal. Sept. 23, 2016) .................................................................................... 12, 13

*Delagarza v. Tesoro Ref. & Mktg. Co.*, No. 09-cv-05803, 2011 WL 4017967, at *12 (N.D. Cal.
  Sept. 8, 2011) ............................................................................................................ 9

*Dylan Eacret et al. v. Crunch, LCC*, United States District Court for the Northern District of
  California, Case No. 3:18-cv-04374 ................................................................................ 7

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974)........................................................ 19

*Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1, 16-17 (2007)................. 18

*Fernandez v. Victoria Secret Stores*, LLC, No. CV 06-04149, 2008 WL 8150856, at *4 (C.D.
  Cal. July 21, 2008) .................................................................................................... 14

*Hanlon v. Chrysler Corporation*, 150 F.3d, 1029-1120 (9th Cir. 1998) ............................. 8, 9, 11

*Harbans v. HFS North America*, Case No. RG06296440 ......................................................... 12

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 *8 (N.D. Cal.
  Apr. 29, 2011) .......................................................................................................... 14

*In re Lorazepam & Clorazepate Antitrust Lit.* .......................................................................... 9

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. .......................................................... 12

*J.B. Hunt*, 258 F.R.D. at 370 ................................................................................................ 10

*Lewis v. Starbucks Corp.*, Case No. 2:07-cv-00490-MCE-DAD (E.D. Cal. Dec. 10, 2008) ....... 17

*Martin v. FedEx Ground Package System, Inc.*, No. C 06–6883 VRW, 2008 WL 5478576, at *8
  (N.D. Cal. Dec. 31, 2008) ............................................................................................ 18

*Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) ............................ 21

*Mineo v. Citysightseeing*, San Francisco County Superior Court Case No. CGC-10-504804.)... 12

*Morgan v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341, 1371 ......................................................... 14

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367 (2009)................................................ 9

*Ortiz v. All West Container Co.*, San Mateo County Superior Court Case No. CIV 502267....... 12

*Paul, Johnson, et al. v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................................................... 17

1

*Rodgriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ............................................ 12

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ................................................................................................................ 18

*Singer v. Becton Dickinson and Co.*, No. 08–CV–821– IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) .......................................................................................................... 18

*Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 1993) ...................................................... 16

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .............................................................................................................................................. 17

*Terry v. Hoovestol, Inc.*, Case No. 16-cv-05183, 2018 U.S. Dist. LEXIS 153180 (N.D. Cal. Sept. 7, 2018) ................................................................................................................................ 14

*Tierno v. Rite Aid Corp.*, No. 05-cv-02520, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006) .............................................................................................................................................. 10

*U.S. v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975) ................................ 20

*Vasquez* ...................................................................................................................................... 12

*Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) ........................................................................................................................ 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2003) ........................................ 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 280 F.3d 124, 136 (2d Cir. 2001)) ............................. 9

*Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal.3d 348, 352-53 (1983) ....................... 18

*Wilson v. Kiewit Pacific Co.*, No. 09-cv-03630 (N.D. Cal. April 4, 2012), ECF No. 119 .......... 17

**Statutes**

28 U.S.C. § 1715 (b) .................................................................................................................. 19

Cal. Labor Code § 2699(g) ........................................................................................................ 18

California Code of Civil Procedure § 1021.5 ............................................................................. 18

Fed. R. Civ. P. 23 .......................................................................................................... 8, 11, 19, 20

Fed. R. Civ. P. 23(a)(1) ................................................................................................................ 8

Fed. R. Civ. P. 23(a)(2) ................................................................................................................ 8

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................... 20

Fed. R. Civ. P. 30(b)(6) ................................................................................................................ 5

Rule 23(a)(2) ................................................................................................................................ 8

1

2

# MEMORANDUM OF POINTS AND AUTHORITIES

3

## I.    INTRODUCTION

4

Plaintiffs Dylan Eacret and Jonathan Kent Merritt (together, "Plaintiffs"), on behalf of

5 themselves, the putative Settlement Class,[1] and allegedly aggrieved employees they seek to

6 represent, respectfully request that this Court preliminarily approve the parties' proposed Joint

7 Stipulation of Settlement and Release ("Settlement Agreement"),[2] entered into by Plaintiffs and

8 Defendant Crunch, LLC ("Defendant") (collectively, the "Parties") on June 28, 2019.

9

The Settlement Agreement seeks to fully release and discharge Defendant from the claims

10 brought against it in the above-captioned matter (the "Action") and all related penalties.    In

11 exchange, Defendant will pay the Settlement Class up to $1,325,000 ("Maximum Settlement

12 Amount") in a non-reversionary class action settlement.    The Settlement Agreement and Notice of

13 Settlement were the products of non-collusive, arm's-length negotiations by informed counsel and

14 parties following an exchange of data and documents, the deposition of Defendants' designee, and

15 an all-day mediation before Michael J. Loeb.    The settlement is fair, reasonable and adequate to

16 all.

17

Accordingly, Plaintiffs seek: (1) provisional certification of the Settlement Class; (2)

18 appointment of Plaintiff Dylan Eacret and Jonathan Kent Merritt as Class Representatives; (3)

19 appointment of Ashwin Ladva and Ladva Law Firm as Class Counsel; (4) preliminary approval of

20 the settlement between Plaintiffs and Defendant; (5) preliminary approval of enhancement awards

21 of $7,500 each to Plaintiffs Dylan Eacret and Jonathan Kent Merritt; (6) preliminary approval of

22 Class Counsel's request for up to 25% of the Maximum Settlement Amount as attorney's fees (i.e.,

23

24 [1] The proposed Settlement Class is defined as: "any current or former personal trainer who worked for Defendant in California during the Class Period who does not opt-out during the period provided for

25 by the Court's Preliminary Approval Order and who has not previously agreed to a general release for claims against Defendant during the Class Period."    The parties' further agree that the Settlement Class

26 includes but is not limited to any current or former personal trainer who worked for Crunch NorCal, LLC, Crunch San Diego, LLC, Crunch Orange County, LLC, and Crunch LA, LLC.    *See* Settlement

27 Agreement ¶ 15.
[2] The Settlement Agreement and the proposed Notice are attached to the Declaration of Ashwin Ladva

28 ("Ladva Decl."), Exhs. 1, 2.

3

up to $331,250.00); (7) appointing Simpluris, Inc. as the Settlement Administrator, and approving the fees and costs of the administration process estimated to be no more than $15,000; (8) approval of the parties' proposed form and method of notifying Class Members of the Settlement Agreement; (9) an order scheduling the hearing date for Final Approval of the Class Settlement.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plaintiffs' Claims

On June 15, 2018, Plaintiffs filed a Class Action Complaint with the California Superior Court for the County of San Francisco, Case No. CGC-18-567322, alleging: (1) violation of California Labor Code ("Labor Code") sections 204, 510, and 1194; (2) violation of Labor Code section 226; (3) violation of Labor Code sections 1194, 1194.2, and 1197; and (4) violation of California Business & Professions Code section 17200, *et seq.*  In the Complaint, Plaintiffs sought to represent a class comprised of all individuals whom Defendant employed in the position of personal trainer in the state of California on or after June 15, 2014.  On July 18, 2018, Defendant removed the case to the United States District Court for the Northern District of California, Case No. 3:18-cv-04374.

On March 12, 2019, Plaintiffs filed a notice with the Labor & Workforce Development Agency ("LWDA") pursuant to the Private Attorneys General Act ("PAGA"), California Labor Code sections 2698 *et seq.*, alleging violations of the California Labor Code during their employment with Defendant ("PAGA Claim").

On May 13, 2019, Plaintiffs filed a first amended civil complaint ("FAC").  In the FAC, Plaintiffs allege the following claims against Defendant: (1) failure to pay wages and overtime in violation of Labor Code sections 204, 510, and 1194; (2) failure to maintain pay records and make records available upon request in violation of Labor Code section 226; (3) failure to pay minimum wage in violation of Labor Code sections 1194, 1194.2, and 1197; (4) failure to pay wages owed upon discharge or quitting of employment violation of Labor Code sections 201, 202, 203, and 203.1; (5) unfair business acts and practices in violation of California Business and Professions Code Sections 17200 *et seq.*; (6) statutory penalties for record keeping in violation of Labor Code section 226(b) and California Industrial Welfare Commission Wage Order ("Wage Order") No. 5-

4

2001 section 7; (7) split shift premium pay in violation of Wage Order No. 5-2001 section 4; (8) reporting time pay in violation of Wage Order No. 5-2001 section 5; (9) failure to afford mandatory breaks or meal periods in violation of Labor Code section 226.7; (10) recovery of statutory penalties under PAGA; and (11) unjust enrichment.  In the FAC, Plaintiffs pursue their claims on a class action basis as well as seek to represent all current or former individuals employed in California as personal trainers who are allegedly owed statutory penalties pursuant to PAGA.

**B.    Discovery**

The Parties have engaged in formal and informal discovery, including an exchange and review of relevant policy documents, data, and other documents relating to Defendants' personal trainers.  On March 8, 2019, Plaintiffs took the deposition of Crunch's designee pursuant to Fed. R. Civ. P. 30(b)(6).

**B.    The Parties' Full Day Mediation with Michael Loeb**

On March 22, 2019, the Parties engaged in an all-day mediation session with Michael J. Loeb, a highly respected and experienced mediator for wage and hour class actions.  The settlement discussions were conducted at arm's-length, and involved an informed and detailed analysis of Defendant's potential liability of total exposure in relation to the costs and risks associated with continued litigation.  Discussions between counsel for the Parties, informal and formal discovery, as well as the investigation and evaluation of the allegations in the Complaint and FAC by the Parties, have permitted each side to assess the relative merits of the claims and defenses to those claims.

**C.    Summary of Settlement Terms**

Through their settlement efforts in mediation, the parties agreed to settle the claims as follows:  Defendant agrees to pay a "Maximum Settlement Amount" of one million three hundred twenty-five thousand dollars ($1,325,000) to the Settlement Class in full satisfaction of all claims arising from the Action.  The Maximum Settlement Amount includes: (1) up to 25% for Attorneys' Fees (i.e., up to $331,250.00); (2) litigation costs, not to exceed $25,000; (3) the "PAGA Settlement Amount" of $20,000 (75% of which will be paid to the California Labor and Workforce

5

Development Agency ("LWDA"), and the remaining 25% which will be distributed to the PAGA class); (4) Enhancement Payments of $7,500 to each named Plaintiff; (5) and Settlement Administration Costs estimated at $15,000.  The "Net Settlement Amount," or amount to be distributed to the Settlement Class, is calculated by subtracting items (1) through (5) from the Maximum Settlement Amount.  In no event will Defendant be liable for more than the Maximum Settlement Amount.  The Maximum Settlement Amount shall be non-reversionary.

The Settlement Class includes all current and former personal trainers who worked for Defendant in California during the class period (from June 15, 2014 through the Effective Date of settlement) who do not opt-out within sixty (60) days from the date the Claims Administrator mails the Notice of Settlement.   The Settlement Class also includes, but is not limited to, any current or former personal trainer who worked for Crunch NorCal, LLC, Crunch San Diego, LLC, Crunch Orange County, LLC, and Crunch LA, LLC.  The Parties estimate that there are approximately 1,378 Class Members.

The Parties' agree that the settlement will release Defendant and any of its former and present parent companies, subsidiaries, affiliates, divisions, corporations in common control, successors, and assigns, as well as all past and present officers, directors, employees, partners, shareholders and agents, attorneys, insurers, and any other successors, assigns, or legal representatives, if any, who could be liable for any of the Released Claims.  The Released Claims include all claims for relief based on the allegations that were brought or could have been brought in this Action under state or federal law, specifically:  (1) violation  of Labor Code sections 204, 510, and 1194; (2) violation of Labor Code section 226; (3) violation of Labor Codes section 1194, 1194.2, and 1197; (4) violation of Labor Code sections 201, 202, 203, and 203.1; (5) violation of California Business and Professions Code Sections 17200 et seq; (6) violation of Labor Code section 226(b) and California Industrial Welfare Commission Wage Order ("Wage Order") No. 5-2001 section 7; (7) violation of Wage Order No. 5-2001 section 4; (8) violation of Wage Order No. 5-2011 section 5; (9) violation of Labor Code section 226.7; (10) recovery of statutory penalties under PAGA; (11) unjust enrichment; and (12) claims for injunctive relief, liquidated damages, penalties, interest, fees, and costs associated with such claims.  "Participating Class

Members" will also release any and all claims against Defendant for failure to pay wages and failure to pay overtime under the Fair Labor Standards Act ("FLSA") by signing a release of FLSA claims which will be printed on the back of the settlement checks, stating:

> "By cashing this check, I consent to join the class action settlement in *Dylan Eacret et al. v. Crunch, LCC*, United States District Court for the Northern District of California, Case No. 3:18-cv-04374, and release the Released Parties as set forth in this Agreement. I reiterate my agreement to the release as set forth in the Settlement including release of FLSA claim."

No Participating Class Members will waive or release any rights may not be waived or released as a matter of law.

The Claims Administrator will calculate individual payments to Class Members by (1) dividing the Net Settlement Amount by the total number of sessions worked for the entire Settlement Class, resulting in the Net Settlement Sessions Value, and then (2) multiplying the Net Settlement Sessions Value by the number of sessions worked during the Participating Class Member during the Class Period.

The "PAGA Settlement Amount" ($20,000.00) shall be apportioned for settlement of the PAGA claims. 75% of the PAGA Settlement Amount shall be paid to the LWDA and 25% of the PAGA Settlement Amount shall be paid to the "PAGA Members" in full satisfaction of all claims for PAGA civil penalties under the California Labor Code, Wage Orders, regulations, and/or other provisions of law alleged to have been violated with respect to the Settlement Class. The amount of the individual PAGA settlement payments will be calculated by the Settlement Administrator by (1) dividing $5,000 by the total number of workweeks for the PAGA Members during the PAGA Period, resulting in the "PAGA Workweek Value," and then (2) multiplying the PAGA Workweek Value by the number of weeks worked each PAGA Member during the PAGA period. The entire PAGA Settlement Amount shall be deemed payment for penalties to be reported on IRS Form-1099. Only Defendant's share of any employer payroll taxes to be paid in connection with the Settlement (e.g. FICA, FUTA, payroll taxes, and/or any similar tax or charge) shall be paid by Defendant in addition to the Maximum Settlement Amount.

7

1    Based on the documents produced, as well as Plaintiffs' counsel's own independent

2  investigation and evaluation, and with the mediator's efforts, Plaintiffs' counsel believes that the

3  settlement with Defendant for the consideration and on the terms set forth in this Agreement is

4  fair, reasonable, and adequate, and is in the best interest of the Class Action Members and PAGA

5  Members in light of all known facts and circumstances, including the risks of significant delay and

6  uncertainty associated with litigation and various defenses asserted by Defendant.

7  **III.    RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET**

8    To determine the fairness of any settlement agreement calling for the creation of a settlement

9  class, courts must decide whether the settlement class meets the requirements for class certification.

10  *Hanlon v. Chrysler Corporation*, 150 F.3d, 1029-1120 (9th Cir. 1998).  Rule 23(a) sets our four

11  prerequisites for certification: (1) numerosity (a 'class [so large] that joinder of all members is

12  impracticable'), (2) commonality ('questions of law or fact common to the class'), (3) typicality

13  (named parties' claims or defenses 'are typical… of the class'), and (4) adequacy of representation

14  (representatives 'will fairly and adequately protect the interests of the class').  *Amchem Prods., Inc.*

15  *v. Windsor*, 521 U.S. 591, 613-14 (1997) (quoting Fed. R. Civ. P. 23).  Here, the Settlement Class

16  meets all of the requirements set forth in Fed. R. Civ. P. 23.

17    **A.    Rule 23(a)(1) Numerosity**

18    The numerosity requirement is satisfied when a plaintiff shows that "the class is so numerous

19  that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs have satisfied

20  their burden to show that the number of putative class members is sufficient numerous that joinder

21  would be impracticable, as the Parties estimate that Settlement Class includes approximately 1,378

22  Class Members.

23    **B.    Rule 23(a)(2) Commonality**

24    Commonality is met because there are "questions of law and fact common to the class."  Fed.

25  R. Civ. P. 23(a)(2).  The Ninth Circuit construes this requirement "permissively."  *Hanlon*, 150 F.3d

26  at 1019.  Even though proposed class members "may possess different avenues of redress," as long

27  as "their claims stem from the same source,"  there is sufficient commonality "to satisfy the minimal

28  requirements of Rule 23(a)(2).    *Id.* at 1029-20.  Here, common questions include: (1) Whether

8

1   Defendants violated California wage laws as to Plaintiffs and Class Members; 2) Whether

2   Defendants forced Plaintiffs and Class members to work off the clock; 3) Whether Defendants

3   violated California overtime wage laws as to Plaintiffs and Class Members; 4)Whether Defendants

4   have unlawfully failed to maintain pay records of Plaintiffs and Class members, in violation of the

5   California Labor Code and 5) Whether Defendants violated the California Labor Code by failing to

6   provide Class members with meal and rest breaks;

7   ### C.    Typicality

8   Typicality is established if "representative claims are reasonable co-extensive with those of

9   absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d  at 1020.  Here,

10  all members in the class action are asserting the same claims as the representative Plaintiffs,

11  therefore, the defenses to those claims would be virtually identical.  Accordingly, the element of

12  typicality is satisfied.

13  ### D.    Rule 23(b)(3) Predominance

14  Predominance tests whether proposed classes are sufficiently cohesive to warrant

15  adjudication by representation.  *Amchem*, 521 U.S. at 623.  For common questions of law and fact

16  to predominate, the issues that are subject to generalized proof should predominate over those

17  subject to individualized proof.  *Ortega v. J.B. Hunt Transport, Inc*., 258 F.R.D. 361, 367 (2009)

18  (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 280 F.3d 124, 136 (2d Cir. 2001)).  Accordingly,

19  courts must determine whether the focus of the proposed class action will be on the words and

20  conduct of the defendants rather than on the behavior of individual class members.  *See, e.g*., *In re*

21  *Lorazepam & Clorazepate Antitrust Lit*., 202 F.R.D. 12, 29 (D.D.C. 2001).  Common questions may

22  predominate "even though certain class members' circumstances var[y] and some of the defendant's

23  practices would have to be proven by anecdotal evidence.  *Delagarza v. Tesoro Ref. & Mktg. Co*.,

24  No. 09-cv-05803, 2011 WL 4017967, at *12 (N.D. Cal. Sept. 8, 2011).

25  Here, the Parties have identified a common nucleus of facts and issues which predominate

26  as to all class members because Plaintiffs can establish all of their claims by focusing on Defendant's

27  company-wide policies and practices that were applied consistently and uniformly to all Class

28  Members throughout the Class Period.

9

1   Defednants company-wide policies and practices were confirmed by interviewing Plaintiffs,

2   reviewing all relevant documents in their possession and documents produced in litigation

3   (California wide time sheets, schedules, pay stubs, written discovery in this matter, including

4   serving Special Interrogatories, Form Interrogatories – Employment Law, and Requests for

5   Production of Documents. (Ladva Decl. ¶¶ 9)). Plaintiffs' counsel contended that Defendants'

6   employees used the same time sheets, schedules, pay stubs and methods of tracking and

7   supervising employees.

8   Plaintiffs' counsel Mr. Ladva deposed defendant's manger in New York City in March of

9   2019 regarding their method of tracking hours worked and overtime policies.  (Ladva Decl. ¶¶

10  10.)   Plaintiffs' counsel confirmed that Defendants New York management retained significant

11  control over California employees.  Defendant fully responded to all of these discovery requests.

12  (Ladva Decl. ¶¶ 10.)

13  Through the discovery process the Parties estimate that there are approximately 1,378

14  Class Members. The Parties agree that the Class Members, include but are not limited to any

15  current or former personal trainer who worked for Crunch NorCal, LLC, Crunch San Diego,

16  LLC, Crunch Orange County, LLC, and Crunch LA, LLC.  (Ladva Decl. ¶¶ 11.)

17

18   Accordingly, because the issues in this class action predominate as to all class members, this

19  element is satisfied.

20  **E.      A Rule 23(b)(3) Class Action is Superior**

21  To determine whether the class method is superior to other means of adjudicating the claims

22  of many people, courts consider: (1) the interest of class members in individually controlling the

23  prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

24  controversy already commenced by or against members of the class; (3) the desirability or

25  undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties

26  likely to be encountered in the management of a class action.  *J.B. Hunt*, 258 F.R.D. at 370; *Tierno*

27  *v. Rite Aid Corp.*, No. 05-cv-02520, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006) (finding

28  requirement satisfied where "there is no indication that class members seek to individually control

10

their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason.".  Here, the superiority requirement is satisfied because it would be highly inefficient for approximately 1,378 Class Members to file individual cases; certification will provide the Settlement Class with an efficient, viable method of obtaining redress for their modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace.  *Hanlon*, 150 F.3d at 1023.  The Settlement Class members likely lack resources or incentives to secure experienced, qualified, counsel or to individually pursue litigation through to completion.  Additionally, individual lawsuits from hundreds of individuals would be wasteful and inefficient for the both the courts as well as Defendant.  Accordingly, certification is superior to any other method of resolving this matter as it will promote economy, expediency, and efficiency.

### F.    Adequacy of Representation

A plaintiff may bring claims on behalf of a class only if he "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?  *Hanlon*, 150 F.3d at 1020 (citation omitted).

Here, neither of the named plaintiffs have any interests in this case that conflict with the interests of the potential class members.  Moreover, both named plaintiffs are willing and able to adequately represent the interests of the classes, have been and will continue to participate in the litigation, and understand that they must seek the best interest of the class throughout litigation.

Further, Class Counsel is both qualified and experienced in and class action wage claims.  (Ladva Decl. ¶¶ 15-22.)  Mr. Ladva has prosecuted numerous class actions claims, and has shown his qualifications though the prosecution of this case, which has resulted in an equitable settlement for the class members.  Both the named plaintiffs and Class Counsel have prosecuted this action vigorously on behalf of the class, including filing this suit, conducting discovery, and monitoring the progress of the case.  Accordingly, named Plaintiffs and Class Counsel will adequately protect the class.   Further, Plaintiffs' Counsel has been practicing in the area of plaintiff's employment

11

1   litigation since June 2000, and have represented Plaintiffs in cases involving discrimination,

2   harassment, retaliation, wage and hour violations, wrongful termination and fraudulent business

3   practices. (Ladva Decl. ¶ 13.)  Plaintiffs' Counsel's wage and hour experience includes *Harbans*

4   *v. HFS North America*, Case No. RG06296440; *Ortiz v. All West Container Co*., San Mateo County

5   Superior Court Case No. CIV 502267; *Cruz v. Fante*, San Mateo County Superior Court Case No.

6   CIV CIV505477; and *Mineo v. Citysightseeing*, San Francisco County Superior Court Case No.

7   CGC-10-504804.) (Ladva Dec. ¶¶ 16-19).  Plaintiffs' counsel has represented numerous parties in

8   civil actions of various types and degrees of complexity. (Ladva Decl. ¶ 14.)   For these reasons,

9   the proposed class should be certified for settlement purposes.

10   **IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

11   At the preliminary approval stage, courts evaluate whether settlement is "fair, reasonable,

12   and adequate."  *Cotter*, 193 F. Supp. at 1037.  Approve of a class settlement is appropriate where

13   "there are significant barriers the plaintiffs must overcome in making their case."  *Chun-Hoo v.*

14   *McKee Foods Corp*., 716 F.Supp.2d  848, 851 (N.D. Cal. 2010).  Difficulties and risks in litigation

15   weigh in favor of approving a class settlement.  *See*, *Rodrigiuez v. W. Publ'g Corp*., 563 F.3d 948,

16   966 (9th Cir. 2009).

17   **A.   The Proposed Settlement Falls Within the Range of Possible Approval**

18   To evaluate the "range of possible approval" criterion, which focuses on "substantive

19   fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against

20   the value of the settlement offer.  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d at 1080. If the

21   settlement confers substantial benefit, while proceeding with litigation would impose significant

22   risks, then the settlement falls within the range of approval.  *Vasquez*, 670 F. Supp. at 1125.

23   For instance, in *Deatrick v. Securitas Sec. Servs. USA*, Case No. 13-cv-05016, 2016 U.S.

24   Dist. LEXIS 132746 (N.D. Cal. Sept. 23, 2016), the court granted approval of a settlement of a

25   $1,385,000 maximum settlement award for wage and hour allegations including failure to pay

26   overtime, failure to provide inaccurate wage statements, waiting time penalties, unfair business

27   practices, and penalties under PAGA.   The court ground that in light of significant litigation risks,

28   "a recovery of approximately 56% of the average class member's loss is a good result."  *Id*. at *15.

1      Like the agreement in *Deatrick*, the Settlement Agreement in this case confers a substantial

2 benefit on the Settlement Class. Pursuant to the terms of the Settlement Agreement, Defendant

3 will pay $1,325,000 in exchange for a full discharge of Plaintiff's and Participating Class

4 Members' Released Claims.

5      In this matter, Plaintiffs alleged that they are owed wages from clocking in and out between

6 training sessions.  In 2017, Plaintiff Eacret's Pay stubs indicate he worked 41 hrs of OT and

7 approximately 108 shifts. (Ladva Decl. ¶28) Plaintiff Eacret and Plaintiff Merritt overtime hours

8 recorded were less than 50 hours each for 2017. (Ladva Decl. ¶28)

9      Plaintiffs contend they were required to clock in and out between training sessions. These

10 clock in and outs would amount to 30 minutes of lost wages for Plaintiff Eacret per shift. (Ladva

11 Decl. ¶29). Therefore, Mr. Eacret is owed wages at his regular rate of pay for 2017 in the amount

12 of $756 (number of shifts (108) multiplied by the amount of time not compensated per a shift (30

13 minutes))(Ladva Decl. ¶29).

14      Of the 1378 putative class 50% were full-time and the remaining 50% were part-time.

15 (Ladva Decl. ¶30). If Plaintiff Eacret's damages were extrapolated for the full-time workers 689

16 times the maximum damages (excluding interest and penalties) would be $520,884 for a one-year

17 period or $1,562,652.00 for the statutory three-year period. (Ladva Decl. ¶30).

18      The remaining 689 part-time workers averaged 2-3 hours per a shift.  Plaintiffs approximate

19 that they worked, on average 54 shifts per year and on average 15 minutes off the clock per a shift

20 or 13.5 hours per worker per a year. Each part-time employee is therefore owed $189 per a year.

21 (Ladva Decl. ¶31). The maximum damages (excluding interest and penalties) is $130,221 for a one-

22 year period. For a three (3) year period those calculations $390,663.00.  (Ladva Decl. ¶31).

23      The total maximum valuation for all workers is $1,953,315.

24      The settlement amount of $1,325,000 is equivalent to approximately 67.83% of Plaintiff's

25 maximum damages analysis (excluding interest and penalties) and the valuation of the Released

26 Claims.  (Ladva Decl. ¶31).

27      Once all the appropriate deductions have been made from the Maximum Settlement

28 Amount, the amount available for distribution to Plaintiffs and the Settlement Class is

1  approximately $923,750.  Participating Class Members will receive on average, an estimated

2  $670.35 per Class Member (i.e., $923,750 / approximately 1,378 class members = $670.35).

3        Moreover, pursuit of the Action through trial would impose significant risks on the

4  outcome of Plaintiffs' claims. First, briefing a motion for class certification and subsequently

5  trying a class action case carry with them inherent risks, expenses and delays.  *See, e.g., Morgan*

6  *v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341, 1371 (Cal. Ct. App. 2012. Moreover, subsequent

7  appellate proceedings, if any, would entail even greater risks, expenses and delays.  Litigation is

8  inherently risky for all sides.  Specifically here, there are a number of dangers to Plaintiffs that

9  could potentially prevent them from obtaining relief for the class members and aggrieved

10  employees in the absence of a settlement, including that Defendant may be able to evade a finding

11  of willfulness, that Defendant may be able to establish a good faith defense.

12        Further, the amount of the PAGA settlement is appropriate given the facts of this case.

13  *Viceral v. Mistras Grp., Inc*., Case No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal.

14  Oct. 11, 2016) (PAGA settlement value of 0.15% reasonable where Rule 23 settlement is

15  "relatively substantial"); *see also*, *McLeod v. Bank of Am. N.A*., 2018 U.S. Dist. LEXIS 195314

16  (N.D. Cal. Nov. 14, 2018). LWDA is on notice of the settlement and has not objected to the PAGA

17  settlement amount.

18        **B.    Settlement Was the Product of Informed, Non-Collusive Negotiations**

19        The Settlement Agreement is the product of adversarial litigation between the parties.  A

20  settlement "in good faith after a well-informed arms-length negotiation" is presumed to be fair.

21  *Fernandez v. Victoria Secret Stores,* LLC, No. CV 06-04149, 2008 WL 8150856, at *4 (C.D. Cal.

22  July 21, 2008); *Terry v. Hoovestol, Inc*., Case No. 16-cv-05183, 2018 U.S. Dist. LEXIS 153180

23  (N.D. Cal. Sept. 7, 2018) (use of experience mediator supports the conclusion that the settlement

24  is non-collusive and likely to benefit class members); *Harris v. Vector Mktg. Corp*., No. C-08-

25  5198 EMC, 2011 U.S. Dist. LEXIS 48878 *8 (N.D. Cal. Apr. 29, 2011) (same).    An

26  "agreement...reached through arms-length negotiation between experienced parties whose

27  negotiations were overseen by an experienced mediator...is entitled to a presumption of fairness."

28  *See, Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW FFMX, 2010 WL 8591002, at

14

1   *15 (C.D. Cal. Apr. 12, 2010).

2       A presumption of fairness exists here because the proposed Settlement (1) is the product

3   of non-collusive, arm's-length negotiations brokered by an independent mediator knowledgeable

4   in wage and hour litigation, (2) that was negotiated by Counsel with significant experience in

5   similar wage and hour litigation, (3) which occurred after Counsel had investigated to evaluate the

6   strength and potential value of the PAGA claim, and the risks of litigating this claim through trial.

7       Both Parties are represented by independent counsel with considerable experience in

8   litigating complex wage and hour class actions.  Ashwin Ladva is an experienced employment

9   litigation attorneys.  Plaintiffs' counsel conducted significant informal and formal discovery, and

10  undertook thorough factual analyses prior to the commencement of settlement negotiations and

11  mediation.  After a full day of mediation with experienced wage and hour mediator Michael J. Loeb,

12  the Parties reached an agreement, which is memorialized in the Settlement Agreement, and which

13  recognizes and reflects the inherent expense, delay and uncertainty that briefing a motion for class

14  certification and eventually conducting a trial would necessarily entail.  Mr. Loeb's oversight of the

15  mediation demonstrates the excellence, diligence, and care that settling complex employment class

16  actions requires.

17      **C.    Plaintiffs' Counsel Conducted Extensive Investigation and Discovery**

18      Both Parties conducted extensive investigation and discovery into Plaintiffs claims.

19  Plaintiffs' counsel investigated Plaintiffs' allegations against Defendant, including any and all

20  applicable defenses and the applicable law.  The investigation included, inter alia, the exchange of

21  data, information and documents concerning the claims, defenses and alleged damages at issue,

22  including Plaintiffs' personnel files and wage statements, and relevant policy documents. The

23  investigation and discovery of both parties supplied the information necessary to intelligently

24  negotiate an equitable PAGA settlement.

25      **D.    The Settlement Does Not Grant Any Preferential Treatment**

26      Under the terms of the Settlement Agreement, after costs, fees and the enhancement awards

27  have been paid, each Participating Class Member will receive a proportionate share of the net

28  settlement fund based on the number of personal training sessions worked by each Participating

Class Member, and a proportional share of the PAGA settlement based on the number of weeks worked. This methodology was adopted to reduce potential inequities between Participating Class Members and to optimize the claim amount for each Claimant. Because each Claimant's share of the net settlement fund is based on a formula that includes the "sessions worked" or "weeks worked" specific to each member, no segment of the settlement class is given undue preferential treatment at the expense of others. As such, the Settlement Agreement contains a rational distribution mechanism and avoids any improper, preferential treatment to any part of the Settlement Class.

### 1. The Settlement Agreement Does Not Grant Unduly Preferential Treatment to the Class Representative

Likewise, the enhancement award contemplated by the Settlement Agreement, if approved by this Court, would not constitute unduly preferential treatment in favor of the named Plaintiffs. In order to determine the propriety of enhancement awards, a district court should consider the actions protecting class interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the Plaintiff. *Staton v. Boeing Co*., 327 F.3d 938, 976-77 (9th Cir. 1993).

Here, named Plaintiffs provided significant assistance to Class Counsel during this case. Specifically, both Dylan Eacret and Jonathan Kent Merritt provided factual background for the Class Complaint; provided and explained documents corroborating their allegations to Class Counsel; reviewed the Complaint and other pleadings filed with the Court; and also traveled to and attended the all-day mediation where they carefully considered, evaluated and approved the terms of the Settlement Agreement on behalf of the Class. These efforts were instrumental in securing the favorable terms of the Settlement Agreement, which will provide monetary compensation to a Class of approximately 1,378 current and former employees of Defendant. Moreover, both named Plaintiffs are also generally releasing all claims, thereby providing a more robust release than that of the Class. In light of these efforts, the proposed Enhancement Awards of $7,500 each to Plaintiff Dylan Eacret and Plaintiff Jonathan Kent Merritt are reasonable and justifies preliminary approval.

**2.      The Attorneys' Fees Under the Settlement Agreement Are Reasonable**

The proposed attorneys' fees should be preliminarily approved by this Court because they are reasonable and fair.  In cases that involve common funds, a court has discretion to award attorneys' fees as a percentage of the settlement. *See*, *Paul, Johnson, et al. v. Graulty*, 886 F.2d 268 (9th Cir. 1989).  The court may consider: (1) whether counsel obtained excellent results for their client, (2) the risk involved in the representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2003).

Here, Plaintiffs' Counsel achieved a good result for the Settlement Class. As stated above, Plaintiffs' Counsel secured an agreement whose Maximum Settlement Amount is 67.83 of the maximum value of the Released Claims, excluding penalties and interest (according to Plaintiffs' damages model) and entitles Participating Class Members to awards averaging approximately $670.35.  These results are consistent with other class action settlements approved by other federal courts in California. *See, e.g., Stuart v. RadioShack Corp.*, No. C-07-4499 EMC (N.D. Cal. Aug. 9, 2010); Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, *Lewis v. Starbucks Corp.*, Case No. 2:07-cv-00490-MCE-DAD (E.D. Cal. Dec. 10, 2008), ECF No. 57. Underscoring the benefit conferred upon the Settlement Class is the fact that litigating wage and hour class actions is inherently risky.  Importantly, Plaintiff's retainer agreement with Plaintiff's Counsel stipulates to attorneys' fees of up to 40%.

Furthermore, the requested attorneys' fees amounting up to 1/3 of the Settlement Amount are consistent with the fees awarded in similar cases. Order Granting Final Approval of Class Action Settlement and Award of Attorneys' Fees and Costs, at 3, *Wilson v. Kiewit Pacific Co*., No. 09-cv-03630 (N.D. Cal. April 4, 2012), ECF No. 119 (approving fee award of 1/3 of the common fund and noting that such award is fair, reasonable and appropriate); *Stuart v. RadioShack Corp*., No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (approving fee award of 1/3 of the common fund and noting that attorneys' fees of 1/3 were "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits."); *Singer v. Becton Dickinson and Co.*, No. 08–CV–821– IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving fee award of 33.33% of the common fund; award was similar to awards in three

17

1    other wage and hour class action cases where fees ranged from 30% to 40%); *Martin v. FedEx*

2    *Ground Package System, Inc.,* No. C 06–6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Dec.

3    31, 2008) (approving fees of 1/3 of common fund in wage and hour class action); *Romero v.*

4    *Producers Dairy Foods, Inc.,* No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14,

5    2007) (awarding fees of 1/3 of common fund in a wage and hour class action, noting: "[f]ee awards

6    in class actions average around one-third of the recovery.").

7          Plaintiffs' counsel are entitled to recover reasonable attorneys' fees and costs as a matter

8    of right under PAGA. *See* Cal. Labor Code § 2699(g) ("Any employee who prevails in any

9    [PAGA] action shall be entitled to an award of reasonable attorney's fees and costs."). Plaintiffs'

10   counsel are also entitled to fees and costs under California Code of Civil Procedure § 1021.5, as

11   the instant PAGA action is by definition "for the public benefit" and secured monetary awards for

12   approximately 1378  aggrieved employees. *See, e.g., Estrada v. FedEx Ground Package System,*

13   *Inc.*, 154 Cal. App. 4th 1, 16-17 (2007). An attorney's fee award is justified where the legal action

14   has produced benefits by way of a voluntary settlement. *Westside Cmty. for Indep. Living, Inc. v.*

15   *Obledo*, 33 Cal.3d 348, 352-53 (1983);

16         The proposed Settlement Agreement provides for an attorneys' fee award of twenty-five

17   percent of the total settlement to compensate counsel for the reasonable attorneys' fees in bringing

18   this class action in addition to prosecuting the PAGA claim to a successful resolution. This award

19   is warranted as Plaintiffs' counsel have expended significant resources to litigate and secure a

20   resolution of the PAGA claim conferring a significant benefit on the Plaintiffs and the non-party

21   PAGA Class members and they have fully documented their hours and rates.

22        **E.**    **There Are No Objectors to the Proposed Settlement**

23         Under the terms of the proposed Settlement, the California Labor & Workforce Development

24   Agency ("LWDA") and the approximately 1378 "aggrieved employees" encompassed by the

25   Settlement will receive a proportional share of the approximately $20,000 to resolve the PAGA claim.

26   At this time, there are no objectors to the proposed settlement from the Plaintiffs, the class members,

27   or the Defendant.  As required by CAFA, Defendant will submit a notice of preliminary settlement

28   to the appropriate federal and state officials no later than 10 days after this motion for preliminary

1   approval is filed with the Court.  28 U.S.C. § 1715 (b).  The class will also receive notice of the

2   settlement and an opportunity to object to the proposed settlement.

3   **V.    APPROVAL OF CLASS NOTICE AND RELATED FORMS**

4       **A.    Administration of Notice, Objections and Claims**

5       The parties have selected Simpluris, Inc., an experienced claims administrator, to serve as

6   the Claims Administrator.  Within ten (10) days of preliminary approval of the Settlement,

7   Defendant will provide Simpluris, Inc. with the last known home address in a format to be

8   determined by the Claims Administrator and Defendant.  Simpluris, Inc. will perform a search based

9   on the National Change of Address ("NCOA") database or similar services available, to update and

10  correct for any known for identifiable address changes.

11      Within fourteen (14) days of the receipt of the class list from Defendant, Simpluris will mail

12  all Class Members the Notice of Settlement.  The Notice of Settlement informs each Class Member

13  of his or her right to opt-out, object to the settlement, or to challenge the number of sessions they

14  have been credited by the Settlement Administrator.  Class Members who wish to object to the

15  Settlement must object in writing to Simpluris no later than sixty (60) days after the mailing of the

16  Notice of Settlement, unless the response deadline has been extended due to the re-mailing of the

17  Notice of Settlement, as provided in the parties' stipulation.  Otherwise, Class Members shall be

18  deemed to have waived any objections and shall be foreclosed from making any objection to the

19  Settlement.

20      **A.    The Court Shall Direct Distribution of the Notice of Settlement**

21      This Court should order distribution of the proposed Class Notice in the manner described in

22  the Settlement Agreement. Fed. R. Civ. P. 23(e)(1)(B) requires the Court to direct notice to class

23  members "in a reasonable manner." *See also, Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173

24  (1974). Notice by mail provides adequate "individual notice to all members." *Id.*  Where the names

25  and addresses of the class members are ascertainable, individual notice through the mail is "clearly

26  the 'best notice practicable.'" *Id.* at 175.  If notice by mail is ordered and addresses are available, as

27  here, publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose."

28  *U.S. v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975).

1     Here, the Class Members' names and last known addresses are ascertainable. The Class
2 Members are current and former personal trainers who worked for Defendant in California, whose
3 names and last known addresses are maintained by Defendant in its personnel files and payrolls
4 records.  Per the Settlement Agreement, the Claims Administrator will use the National Change of
5 Address database and will use the most recent address for each class member—either from
6 Defendant's records or the National Change of Address database—when mailing the class notice.
7 The proposed Class Notice fairly and accurately summarizes the terms of the Settlement Agreement
8 and the Class Members' rights (including procedures for requesting exclusion from or objecting to
9 the Settlement Agreement, as well as challenging the number of personal training sessions attributed
10 to them). Under these circumstances, Plaintiff submits that notice by mail is sufficient to comply
11 with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

12     **B.     The Proposed Class Notice and Claims Process Are Appropriate**

13     Fed. R. Civ. P. 23(c)(2)(B) provides that the Court must direct to class members the best
14 notice practicable under the circumstances, including individual notice to all members who can be
15 identified through reasonable effort. The notice must concisely and clearly state in plain, easily
16 understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the
17 class claims, issues or defenses; (4) that a class member may enter an appearance through counsel
18 if the member so desires; (5) that the Court will exclude from the class any member who requests
19 exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a
20 class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

21     The content of the proposed Class Notice fully complies with due process and Fed. R. Civ.
22 P. 23.  The Class Notice provides specifics regarding the date, time, and place of the Final Approval
23 Hearing, and informs Class Members that they may enter an appearance through counsel.  (Ladva
24 Decl. Exh. 1).  The Notice informs Class Members how to exercise their rights and make informed
25 decisions regarding the proposed Settlement Agreement and tells them that if they do not opt out,
26 the judgment will be binding upon them.  (Ladva Decl. Exh. 2).  The Notice informs the Settlement
27 Class about the application of Plaintiff's Counsel for reimbursement of attorneys' fees and costs
28 from the Maximum Settlement Amount, as well as the estimated amounts sought.  *Id.*  The Notice

20

also provides the amount estimated for settlement administration costs, which will be deducted from the Maximum Settlement Amount. *Id.* The Notice describes the terms of the Settlement Agreement, clearly informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member on the top of the first page. *Id.* It also provides instructions for Class Members to access settlement-related documents and information via a website, at no cost to the Class Member. *Id.* The Notice is also clear that the Court can only approve or deny the settlement. *Id.*

The detailed information in the Proposed Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) (stating that a "very general description of the… settlement" satisfies standards).

## V.    THE COURT SHOULD SET A FINAL APPROVAL HEARING

Finally, this Court should set a hearing for final approval of the Settlement Agreement on a date to be scheduled within sixty (60) days after the end of the Claims Period, or at the earliest available time for the Court, whichever is later. In order to have time for the notice dissemination process to be completed, for the parties to review any objections and prepare responses, and for Plaintiff to prepare papers supporting final approval, Plaintiffs propose that the Court should set the final approval hearing on or after November 21, 2019, and allow the parties to file any final approval papers for the hearing twenty-one (21) days before the hearing. These dates would allow a reasonable period for mailed notice and for Class Members to submit claims, object to, or opt-out of the settlement, but would not unduly delay the Class Members' receipt of individual settlement awards.

## VI.    CONCLUSION

The proposed settlement is fair, adequate, and reasonable, as it represents a reasoned compromise reached through arms-length negotiations and considers the risks, complexity, and expense of further litigation. For the reasons discussed above, Plaintiffs request that the Court enter preliminary approval of the class action settlement, approve the form of the proposed notice, and approve the proposed scheduled, including setting a date for a final approval hearing.

1

2    Dated: June 28, 2019                    LAW OFFICES OF ASHWIN LADVA

3
                                            By  _____/s/_____
4                                               Ashwin Ladva
                                                Attorneys for Plaintiffs
5                                               DYLAN EACRET and JONATHAN KENT
                                                MERRITT
6

7                                               4845-1213-3275, v. 2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT                    Case No. 3:18-cv-04374