UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DYLAN EACRET, et al., | Case No.  18-cv-04374-JST (RMI) |
| Plaintiffs, | |
| v. | **ORDER RE: THIRD DISCOVERY DISPUTE LETTER BRIEF** |
| CRUNCH, LLC, | Re: Dkt. No. 113 |
| Defendant. | |

Now pending before the court is a jointly-filed discovery dispute letter brief (dkt. 113) through which Plaintiffs seek to compel the production of certain discovery (RFP Nos. 2, 3, 35, and 49) as well as seeking leave to conduct a third deposition regarding the same topic: "Defendant's policies concerning the calculation of Plaintiffs' overtime rates as employees of Defendant from July 1, 2015 to September 26, 2018." *See id*. at 1-3. The court will note that the period allotted for fact discovery in this case recently closed on September 15, 2022, however the currently-pending discovery dispute is timely because it was filed within 7 days after the close of fact discovery. *See* Sched. Order (dkt. 111) at 1; *see also* Civil L.R. 37-3. With that said, the undersigned will turn to the merits of the Parties' disputes – and, for the reasons stated herein, Plaintiffs' requests to compel are denied.[1]

The Parties' have grouped their disputes into three categories and the court will evaluate them according to the same grouping. Plaintiffs first wish to compel material responsive to RFP No. 2 (all writings memorializing Plaintiffs' work schedules during their tenures in Defendant's

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument.

employ), RFP No. 35 (documents relating to, referencing, or concerning Plaintiffs' working hours), and RFP No. 49 (all timecards, time sheets, and work schedules of California personal trainers). *See* Ltr. Br. (dkt. 113) at 1-3. Plaintiffs suggest that "Defendant has possession, custody, or control of these time records or could have requested the missing information from the software company it used to maintain time records during Plaintiffs' employment." *Id*. at 2. As to "documents about who edited the time records and the dates of the edits," Plaintiffs contend that evidentiary spoliation has occurred for which Defendant should be sanctioned. *Id*. at 2. Plaintiffs' sanctions request rests on the following foundation: (1) Plaintiffs submit that in another – unrelated – case, "Defendant maintained and produced time records that indicate[] the name of the person who edited time records as well as the date and time of the edits"; and (2) Plaintiffs argue that, despite their case being filed earlier, "none of the time records produced indicate the name of the person who edited the time records as well as the date and time of the edits." *Id*. Plaintiffs then add that because this information must have been in Defendant's possession or control at the outset of this case, that the failure to produce it in discovery must amount to willful evidentiary spoliation, such that Plaintiffs would be entitled to an adverse inference presumption and a jury instruction to that effect. *Id*. at 2-3. Regarding RFP Nos. 2, 35, and 49, Plaintiffs add that, on the same date the Parties filed their letter brief, Defendant produced further electronic time records – which Plaintiffs did not have the opportunity to review – but "[i]f Defendant has produced all time records then Plaintiff[s] will withdraw the spoliation sanction request." *Id*. at 3.

Defendant responds that it has produced all of Plaintiffs' time records in its custody, possession, or control – to wit, wage statements, punch records, emails related to their wages and schedules, as well as all audit records, including Plaintiffs' time records with the audit trail. *Id*. at 3-4. Regarding the "other work schedules at the location Plaintiffs worked which Plaintiffs contend has not been produced" (*id*. at 2), Defendants submit that these "alternative work schedules," which Plaintiffs refer to, are essentially Plaintiffs' own Google Calendars to which Defendant does not have access. *See id*. at 3-4. ("The company does not have access to its personal trainers' personal Gmail accounts or Google Calendar[,] [and] [w]hen asked at his deposition whether [Plaintiff Eacret] took any steps to preserve his Google Calendar (or any other documents

necessary to prove his claims), Plaintiff Eacret said, 'no.'"). Defendants then add that Plaintiffs now seek to sanction Defendants for documents that Defendant does not possess, that they were under no obligation to retain, and that Plaintiffs themselves failed to retain despite the fact that these records were part of Plaintiffs' own accounts with Google. *Id*. at 3-4. Thus, as for Plaintiffs' request to compel the material encompassed in RFP Nos. 2, 35, and 49, because Defendants have submitted that they have tendered all responsive material in their possession, custody, or control, Plaintiffs' request to compel that which has already been tendered, or that which Defendant does not have in its possession, custody, or control is **DENIED**.

As for Plaintiffs' spoliation argument – "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See InternMatch, Inc. v. Nxtbigthing*, LLC, No. 14-cv-05438-JST, 2016 U.S. Dist. LEXIS 15831, at *8 (N.D. Cal. Feb. 8, 2016). As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. *Id*. (citing *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litigation)*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). "It is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1319-20 (Fed. Cir. 2011) (quoting *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005)). However, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)). In the present context, it should also be noted that possession, custody, or control is a necessary prerequisite to evidentiary spoliation. *See Ortiz v. City of Worcester*, No. 4:15-cv-40037-TSH, 2017 U.S. Dist. LEXIS 80351, at *10-11 (D. Mass. May 25, 2017) (explaining that a party cannot be charged with spoliation on the basis that it failed to create or keep copies of records which were never in its possession, custody, or control); *see also Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012) ("[T]he party urging that

United States District Court
Northern District of California

1  spoliation has occurred must show that there is evidence [in the alleged spoliator's possession,

2  custody, or control] that has been spoiled (*i.e.*, destroyed or not preserved)); *see also Tri-County*

3  *Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007).

4  To the extent that Plaintiffs' sanctions request targets their own Google Calendars or

5  Gmail accounts, because Defendant "does not have access to its personal trainers' personal Gmail

6  accounts or Google Calendar[s]," Plaintiffs' sanctions request is **DENIED**. To the extent that the

7  sanctions request addresses any other component of RFP Nos. 2, 35, and 49, the request is

8  **DENIED** as to the materials Defendants have already tendered, and **DENIED** as to all other

9  materials because Defendants have certified to the court in writing (*see* Ltr. Br. (dkt. 113) at 3-4)

10  that all responsive material in their custody, possession, or control has already been tendered. In

11  other words, the undersigned finds that Plaintiffs' spoliation motion is based on nothing more than

12  their unfounded disbelief as to Defendant's representations that all responsive material in its

13  custody, possession, or control has already been tendered, and that Defendant has neither

14  destroyed its own records, nor has it ever had access to Plaintiffs' personal Gmail and Google

15  Calendar accounts.[2] It should also not go without mention that Plaintiffs have improperly

16  

17  [2] Plaintiffs' sanctions request appears half-hearted, at best. Plaintiffs do not explicitly tether the sanctions request to one or more specifically-identified documents. *See* Ltr. Br. (dkt. 112) at 2. Instead, Plaintiffs

18  appear to link their sanctions request, broadly, to "time records [that] were maintained electronically." *Id.* (Plaintiffs contend, in eminently conclusory fashion, that "Defendant acted with intent to deprive Plaintiffs

19  of time records."). However, as mentioned above, Defendant has certified to the court that "[a]ll of Plaintiffs' time records in Crunch's possession, custody, and control have been produced in compliance

20  with FRCP 34." *Id.* at 3. Federal Rule of Civil Procedure 37(e) sets forth three criteria to determine whether spoliation of electronically stored information has occurred: (1) the ESI "should have been preserved in the

21  anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery." Fed. R. Civ.

22  P. 37(e). If these criteria are satisfied and the court can identify prejudice stemming from the loss of the ESI, Rule 37(e)(1) permits a court to "order measures no greater than necessary to cure the prejudice." Fed.

23  R. Civ. P. 37(e)(1). Plaintiffs have neither specifically identified what documents or information have been allegedly spoliated, nor the nature of the prejudice it has suffered. In any event, if ESI is destroyed and the

24  court finds that a party "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) permits courts to impose more severe sanctions, including adverse inference

25  presumptions or jury instructions, or even terminating sanctions. Fed. R. Civ. P. 37(e)(2). While Rule 37(e) does not define "intent," the 2015 Advisory Committee Notes provides that "[n]egligent or even grossly

26  negligent behavior" is insufficient to show "intent" for Rule 37(e)'s purposes. *See* 2015 Advisory Comm. Notes. In that vein, a party's conduct satisfies the intent requirement when it is either established or

27  reasonable to infer that the party purposefully destroyed evidence in order to avoid its obligations in litigation. *See Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, *3 (N.D. Cal. Sept. 5, 2018).

28  Plaintiffs have made no real effort to establish spoliation under these standards. In short, there is no indication whatsoever (and Plaintiffs themselves seem unsure): that Defendant possesses (or otherwise has

1  shoehorned what should have been a stand-alone sanctions motion (which should have been

2  separately filed and noticed) amidst a series of other discovery disputes that were presented in a

3  jointly-filed letter brief. *See generally* Civil L.R. 7-8(a)-(c). Accordingly, the improper form and

4  manner of filing is an independent basis on which Plaintiff's sanctions request is due to be denied.

5     The second category of disputed discovery pertains to Plaintiffs' RFP No. 3, which deals

6  with all writings identified in Defendant's initial disclosures. *See* Ltr. Br. (dkt. 113) at 3.

7  Following some argument between the Parties about whether or not Defendant would produce

8  class discovery, or simply individual discovery as to the two named Plaintiffs, Plaintiffs noted that

9  they are "limiting the request to [] individual claims." *Id*. In this regard, rather than seeking to

10  compel material to which Plaintiffs might claim an entitlement, but which they have not received,

11  Plaintiffs merely "request[] that Defendant supplement its response stating it will produce all

12  documents within its custody, control, or possession [as to] all documents identified in its

13  disclosures concerning Plaintiff[s'] individual claims including Plaintiffs' time records. Plaintiff[s]

14  request[] that Defendant serve supplemental responses." *Id*. Defendant responds to the effect that

15  it "has since amended its disclosures and produced all documents identified in its disclosures,

16  including Plaintiff[s'] personnel files, time records, [] payroll records, [and] related emails from

17  various fitness managers regarding Plaintiffs' individual claims." *Id*. at 4. Given the fact that all

18  Plaintiffs seek from the court as to RFP No. 3 is "that Defendant serve supplemental responses" in

19  this regard, and given also Defendant's portion of the letter brief sets forth that it has since

20  amended its disclosure and produced all documents identified therein, Plaintiffs' request is

21  **DENIED** as unnecessary.

22     Lastly, Plaintiffs seek a third bite at the proverbial apple such as to depose someone

23  employed by Defendant to secure further testimony as to "how the overtime rates of Plaintiffs[']

24  _____

25  access to) any information that should have been tendered but was not; that Defendant has destroyed – or otherwise failed to preserve – any evidence at all (let alone evidence it was obligated to preserve); that

26  Plaintiffs have in any way been prejudiced by any specifically identified and legally significant act or omission on Defendant's part; or, that there is any indication that Defendant has done anything with the

27  intent of depriving Plaintiffs of the ability to make use of any information or evidence in this litigation. Instead, as mentioned, Plaintiffs' finger-pointing in this regard rests wholly on a conclusory and speculative

28  foundation.

United States District Court
Northern District of California

[salary] were calculated on wage statements and how recalculations of overtime listed in Plaintiffs' wage statements were calculated." *Id*. at 3. While Plaintiffs had previously noted the relevant deposition topic under somewhat different phrasing ("Defendant's policies concerning the calculation of Plaintiffs' overtime rates as employees of Defendant from July 1, 2015 to September 26, 2018"), Plaintiffs now find themselves dissatisfied with the responses to their questioning at the two prior depositions concerning this subject. *Id*. at 3. Apparently, Defendant's first witness informed Plaintiffs that their policies concerning the calculation of these overtime pay rates were set forth in its handbook. *Id*. at 4. Then, according to Defendant, when another witness was produced for a second deposition on this same topic, "Plaintiffs' counsel only asked him a few questions about overtime and ended the deposition early." *Id*. Defendants add that "Plaintiffs are not entitled to keep asking the same questions over and over until they obtain the response they want . . . [t]his case has been pending for five years and Defendant has repeatedly met and conferred with Plaintiffs' counsel regarding the regular rate and how state and federal law requires it to be calculated." *Id*.

Plaintiffs' portion of the letter brief pertaining to this deposition dispute is limited to only six sentences, none of which explain the precise nature of Plaintiffs' inability to understand how their regular or overtime pay was calculated or – more importantly – why they blame Defendant for their inability to understand the nature of those calculations. While discovery has now closed, the Parties to this case have enjoyed an elongated discovery period, during which Plaintiffs had access to many discovery mechanisms (RPFs, two depositions, interrogatories, and requests for admission) through which to gather the information they sought. Quite apart from Plaintiffs failure to clearly state the exact nature of the information that has allegedly been withheld from them, or to clearly set forth why that might be Defendant's fault – it once again appears (as has been the case with the first two categories of disputes discussed herein) that Plaintiffs' are simply unhappy with the answers occasioned by their questions and requests, so they have chosen to keep asking the same questions or making the same requests until they receive a response that they find more palatable. Fact discovery has now closed, and nowhere in Plaintiffs' six sentence request for another bite at the deposition apple is there the slightest indication that Plaintiffs were denied a fair

opportunity to conduct either of the two depositions regarding their identified topic regarding Defendant's "policies concerning the calculation of Plaintiffs' overtime rates," instead, it only appears that Plaintiffs are unhappy with the responses they received. *See id*. at 11 ("Oh, so is there anywhere in writing in terms of how the overtime is calculated[?] It's in our handbook. That specifies how the overtime rules apply."). Plaintiffs' portion of the letter brief fails to criticize the deponent's response directing them to the location of the policy (namely, the handbook), or to explain what other information Plaintiffs sought but that was kept from them in the course of either of the two depositions they took regarding this topic. Accordingly, Plaintiffs' request for the undersigned to force Defendant to endure a third deposition regarding this same topic is **DENIED**.

   **IT IS SO ORDERED.**

Dated: September 26, 2022

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California